IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

MARGARET H.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,[2]

    Defendant.

Case No. 6:17-cv-00840-AA
**OPINION AND ORDER**

AIKEN, Judge:

Plaintiff Margaret H. brings this action pursuant to the Social Security Act ("Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's applications for Disability

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.

[2] Nancy A. Berryhill's term as the Acting Commissioner of the Social Security Administration ended on November 17, 2017, and a new Commissioner has not been appointed. The official title of the head of the Social Security Administration is the "Commissioner of Social Security." 42 U.S.C. § 902(a)(1). A "public officer who sues or is sued in an official capacity may be designated by official title rather than by name[.]" Fed. R. Civ. P. 17(d). I therefore refer to defendant only as Commissioner of Social Security.

Page 1 – OPINION AND ORDER

Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons set forth below, the Commissioner's decision is affirmed and this case is dismissed.

## BACKGROUND

On January 15, 2013, plaintiff filed applications for DIB and SSI, alleging disability as of January 1, 2004. Plaintiff was fifty-four years old on the alleged disability onset date. She completed some college coursework and previously worked as a senior foster caregiver. Plaintiff's impairments include post-traumatic stress disorder ("PTSD") and dysthymia. The agency denied both the DIB and the SSI claims initially and again upon reconsideration. Plaintiff requested a hearing and the ALJ subsequently denied plaintiff's claims for benefits on February 25, 2016. Plaintiff requested a review of the hearing decision, which the Appeals Council denied on March 28, 2017. Plaintiff now seeks review of the ALJ's decision in this Court.

## STANDARD OF REVIEW

The district court reviews the Commissioner's final decision under the substantial evidence standard; the decision will be disturbed only if it is not supported by substantial evidence or is based on legal error. *See* 42 U.S.C. § 405(g) ("[F]indings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Webb v. Barhart*, 433 F.3d 683, 686 (9th Cir. 2005). "Substantial evidence means more than a scintilla, but less than a preponderance." *Smolen*, 80 F.3d at 1279 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971) and *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)) (internal quotation marks omitted). The court must weigh "both the evidence that supports and the evidence that detracts from the ALJ's

conclusion." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). If the evidence is subject to more than one interpretation but the Commissioner's decision is rational, the Commissioner must be affirmed, because "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## COMMISSIONER'S DECISION

The initial burden of proof rests upon plaintiff to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see also id.* § 1382c(a)(3)(A) (substantially identical standard for SSI).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a)(4); *id.* § 416.920(a)(4). At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged disability onset date on January 1, 2004. At step two, the ALJ found the following severe impairments: PTSD and dysthymia. However, the ALJ found that the record failed to establish any severe, medically determinable impairment existing between January 1, 2004, the alleged onset date, and June 30, 2009, the date last insured, as relevant to plaintiff's DIB application. The ALJ therefore denied plaintiff's DIB claim at step two.

Proceeding with the analysis for plaintiff's SSI claim, at step three, the ALJ determined plaintiff's impairments, whether considered singly or in combination, did not meet or equal "one of the listed impairments" that the Commissioner acknowledges are so severe as to preclude

substantial gainful activity. Tr. 19. The ALJ next assessed the a residual functional capacity ("RFC") and found that plaintiff is able to

> [P]erform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to simple, routine tasks consistent with unskilled work as defined by the Dictionary of Occupational Titles. The claimant is limited to simple work-related decisions. The claimant is limited to occasional interaction with supervisors, but frequent interaction with coworkers and the public.

Tr. 21. At step four, the ALJ found that plaintiff has no past relevant work because she has not earned at "substantial gainful activity" levels since 2001. Tr. 26. At step five, the ALJ found that plaintiff retained the ability to perform the representative jobs of dietary aid, laundry worker II, and garment sorter. Therefore, the ALJ found that plaintiff had not been under a disability from January 1, 2004, the alleged disability onset date, through February 25, 2016, the date of the ALJ's unfavorable decision.

## DISCUSSION

On appeal, plaintiff contends that the ALJ erred by (1) disposing of plaintiff's DIB claim at step two of the sequential analysis, (2) failing to provide specific, clear, and convincing reasons supported by substantial evidence to discredit plaintiff's subjective symptom testimony, and (3) failing to adequately account for all of plaintiff's mental limitations in the formulation of the RFC and hypotheticals posed to the vocational expert, resulting in an error at step five of the sequential analysis.

I. *The ALJ erred at step two*

Plaintiff first argues that the ALJ's step two finding was not supported by substantial evidence. A claimant is not disabled unless he or she has a severe impairment, or combination of impairments, significantly limiting his or her physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds no severe impairments at step

two, the disability claim will be denied. If, however, the claimant has at least one severe impairment, the ALJ then proceeds to step three. A claimant's impairment (or combination of impairments) is not severe if it does not significantly limit his or her physical or mental ability to do basic work activities (*i.e.*, the abilities and aptitudes necessary to do most jobs). *Id.* §§ 404.1521, 416.921. To satisfy his or her burden at step two, the claimant must prove the severity of the physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's statement of symptoms alone will not suffice. *Id.*

The step-two inquiry is a de minimis screening device used to dispose of groundless claims. *Bowen*, 482 U.S. at 153-54. An impairment or combination of impairments can be found "not severe" only if the medical evidence establishes a slight abnormality that has "no more than a minimal effect on an individual's ability to work[.]" SSR 85-28, 1985 WL 56856, at *3 (1985); *see also Webb*, 433 F.3d at 687 (citing SSR 85-28 with approval).[3] In addition to considering whether each impairment is sufficiently severe, it is important for the ALJ to consider the combined effect of all the claimant's impairments on his or her ability to function. *Smolen*, 80 F.3d at 1289-90.

The ALJ evaluates the intensity and persistence of a claimant's symptoms, considering all of the available evidence, including medical history, the medical signs and laboratory findings and statements. 20 C.F.R. §§ 404.1529, 416.929. The ALJ then determines the extent to which the alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs, laboratory findings, and other evidence, and decides how these symptoms affect the claimant's ability to work. *Id.* Once the claimant has

---

[3] Social Security Rulings, though not binding on federal courts, are persuasive authority because they establish the Social Security Administration's official interpretations of the statutes.

Page 5 – OPINION AND ORDER

produced medical evidence of an underlying impairment which is reasonably likely to be the cause of the alleged symptom, medical findings are not required to support the alleged severity of that symptom. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991).

In this case, the ALJ found that plaintiff had severe impairments at the time of her application in in 2013, but that the record failed to establish that those medically determinable impairments existed between January 1, 2004, alleged disability onset date, and June 30, 2009, plaintiff's date last insured. Accordingly, the ALJ disposed of plaintiff's DIB claim at step two. The date last insured is significant for DIB because eligibility and benefit calculation is based on the claimant's prior work history, whereas SSI is strictly need-based. *Compare* 42 U.S.C. § 423(a)(1)(A) & (c) *with* 42 U.S.C. §§ 1381a-83.

The ALJ's step two decision rested on the fact that the record lacked a formal diagnosis of PTSD or dysthymia before June 30, 2009, and contained limited treatment records relating to plaintiff's psychological impairments during that period. Plaintiff justifies the dearth of pre-2009 medical documentation by noting that she lacked medical insurance and financial resources to seek treatment during the relevant period. "Disability benefits may not be denied because of the claimant's failure to obtain treatment [s]he cannot obtain for lack of funds." *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995). Plaintiff argues that the ALJ failed to consider plaintiff's financial barriers to treatment.

The Commissioner responds by pointing to the fact that plaintiff was covered under the Oregon Health Plan until she let her policy lapse, after which time she was eligible for (and obtained) treatment as a student at the two colleges she attended.[4] But the ALJ never mentioned those facts or otherwise discussed plaintiff's financial barriers to treatment. As such, the

---

[4] The record demonstrates that, while she was a student, plaintiff secured free or low-cost care through Lane Community College and Portland State University.

Commissioners arguments are *post hoc* justifications for ALJ's failure to consider plaintiff's lack of medical insurance. A court cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision. *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001).

Additionally, subsequent records establish the severe, medically determinable impairments of PTSD and dysthymia. In proving that she had a qualifying impairment before her date last insured, plaintiff is not limited to contemporaneous medical records. *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (holding that a doctor's opinion that a medical condition existed prior to that doctor's examination of a claimant is competent evidence that an ALJ must consider). Subsequent medical records can have particularly strong evidentiary value for PTSD, for which "exposure to a traumatic or stressful event is listed explicitly as a diagnostic criterion." Trauma and Stressor-Related Disorders, American Psychiatric Association Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (2013). Here, plaintiff's medical records make it clear that her PTSD is attributed to domestic abuse which took place while she was in her 20s and 30s, well before her date last insured. There is no mention of any other trauma that could have caused plaintiff's PTSD; as a result, the post-2009 diagnosis is strong evidence that the PTSD diagnosis (and resulting limitations) existed prior to 2009. Therefore, the ALJ erred at step two of the sequential analysis for plaintiff's DIB claim.

II. *The ALJ provided clear and convincing reasons for rejecting plaintiff's testimony*

Plaintiff next argues that the ALJ discounted her testimony about symptom severity without providing legally sufficient justification. "The ALJ is responsible for determining credibility" and resolving conflicts in the evidence. *Magallanes v. Bowen*, 881 F.2d 747, 750

(9th Cir. 1989). The ALJ's findings regarding a claimant's subjective complaints must be supported by specific, cogent reasons. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006).

"In evaluating the credibility of a claimant's testimony regarding subjective [symptoms], an ALJ must engage in a two-step analysis." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotation marks omitted). "Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010). "Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036 (internal quotation marks omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Berry*, 622 F.3d at 1234. In deciding how much weight to assign to a claimant's testimony, the ALJ may consider the claimant's reputation for truthfulness, inconsistencies either in his or her testimony or between the testimony and his or her conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms. *Smolen*, 80 F.3d at 1284.

Plaintiff's testified that her pain and fatigue worsened in June 2009, which prevented her for continuing her work as a senior foster care aide. Plaintiff attempted to continue her studies, but stated that she was unable to sustain full-time studies even without having to work. Plaintiff

further noted that she had trouble trying to stay conscious during her commute to school using public transportation. She described increased difficulty "as time progressed" along with memory problems. Tr. 50. She was unable to complete her degree after running "out of financial aid, and steam[,]" Tr. 50, and subsequently moved to California to be near her sister, noting continued experiences of dizzy spells and "foggy brain[,]" Tr. 55.

Plaintiff returned to Oregon in 2012, where she made an unsuccessful work attempt as a caregiver, stating that it was "exhausting and it just ended abruptly." Tr. 48. She reported experiencing daily pain and flu-like symptoms. Plaintiff utilized marijuana at night because it helped her sleep. She also stated that she is able to complete household chores, such as dishes and laundry, provided that she has a break every fifteen to thirty minutes. Following her doctor's recommendation to exercise, plaintiff did yard work, which involved pulling weeds and watering plants. Lastly, plaintiff testified that she is able to grocery shop with her partner and visit her son every week or two.

The ALJ discredited plaintiff's subjective symptom testimony for a number of reasons. First, the ALJ found that plaintiff's statements were inconsistent with medical evidence. Plaintiff stated that she was dizzy, confused, and had wording finding issues. Contrary to this testimony, during a mental status examination, she was found fully oriented, she knew the date, and she had an intact short-term memory, and spoke in excessive detail. That reason is both clear and convincing. The ALJ is permitted to consider inconsistencies between plaintiff's testimony and the record, including medical evidence. *Smolen*, 80 F.3d at 1284.

Next, the ALJ found that the use of marijuana further contributed to plaintiff's problems. Specifically, the ALJ noted that plaintiff uses marijuana daily, but only when she is not in treatment. While the justification here is clear, it is not convincing. There is no evidence in the

Page 9 – OPINION AND ORDER

record supporting the conclusion that plaintiff's use of marijuana contributed to the severity of her symptoms or undermined the evidentiary value of her symptom testimony.

The ALJ next cited plaintiff's limited work history and concluded that her termination was for reasons other than her impairments. The ALJ also found that plaintiff's past ability to work supports the conclusion that she should be able to work presently. Those reasons are neither clear nor convincing. During a psychological evaluation, plaintiff reported that she was "indirectly fired from the [adult foster care] position in that the woman for whom she cared set up other services without communicating with her about it." Tr. 391. Thus, it remains unclear why plaintiff was fired for her previous work as a caregiver, specifically whether the termination was attributable to her impairments.

The ALJ also noted plaintiff's education history, specifically that she dropped out of college only after running out of financial aid and maintained a 3.7 GPA leading up to that time. That reasoning is both clear and convincing. Plaintiff's ability to manage three years of schooling while maintaining an average GPA of 3.7 is a strong indication that her conditions are not as severe as alleged.

The ALJ then noted a possible secondary gain issue because plaintiff applied for benefits three times, all resulting in denials. While prior benefits applications are a permissible consideration in weighing a claimant's testimony, here the applications offer limited persuasive value because the record fails to establish why plaintiff was denied in each of these applications (*i.e.*, whether they were denied on the merits).

The ALJ also concluded that plaintiff's testimony about her daily activities contradicted plaintiff's other testimony. Plaintiff drives, shops for groceries, runs errands, watches her grandson, prepares meals, works in the garden, and performs household chores, all on a weekly

Page 10 – OPINION AND ORDER

basis. The reasoning provided by the ALJ is both clear and convincing. The ALJ reasonably found that the activities described above conflict with plaintiff's claim that she could be active for no more than 15-30 minutes before pain and exhaustion forced her to rest. In addition, the ALJ reasonably found a conflict between the described activities and plaintiff's testimony that she was unable to work due to dizziness and confusion. If plaintiff struggles to work due to dizziness and confusion, it is reasonable to conclude that she would be unable to regularly perform activities involving driving, running errands, watching children, preparing meals, working a garden, and performing household chores, even if afforded regular breaks. The ALJ may consider inconsistencies between claimant's testimony and her conduct or her daily activities. *Smolen*, 80 F.3d at 1284.

The ALJ also noted that plaintiff, when filing information about her disabilities, checked all available boxes when detailing the activities in which she is impaired. The ALJ found that checking all those boxes reduced the credibility of plaintiff's allegations. This is both clear and convincing; the ALJ reasonably viewed with skepticism plaintiff's contention that her impairments limit her in all areas.

Finally, the ALJ gave less weight to plaintiff's testimony because she sought treatment only sporadically before filing for disability in 2013, at which point treatment became more regular. Plaintiff justifies this by stating that she was unable to afford regular treatment due to her limited financial resources. On appeal, the Commissioner argued that plaintiff rarely visited health clinics despite being on the Oregon Health Plan and being eligible for care at two colleges she attended. Additionally, plaintiff did not receive medical treatment when she was in California and stated that she cannot remember if she even applied. For the reasons set out in Section I, *supra*, these are *post hoc* rationalizations and cannot "serve as sufficient predicate for

Page 11 – OPINION AND ORDER

agency action." *Am. Textile Mfrs. Inst., Inc. v. Donovan*, 452 U.S. 490, 537 (1981). Because the ALJ did not consider plaintiff's access to medical treatment as a student when originally evaluating the claim, plaintiff's sporadic treatment cannot be used to discredit plaintiff's testimony. Therefore, this argument is clear but not convincing because the ALJ cannot discredit a claimant for not obtaining treatment she cannot afford. *Orn. v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).

In sum, the ALJ's treatment of plaintiff's testimony rested on a mix of legally sufficient and legally insufficient justification. An ALJ's overall credibility decision may be upheld even if not all of the ALJ's reasons for rejecting a claimant's testimony are upheld. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). "[T]he relevant inquiry in this context is not whether the ALJ would have made a different decision absent any error, . . . it is whether the ALJ's decision remains legally valid, despite such error." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162. The inconsistency between plaintiff's testimony and the medical evidence, her education history and strong academic performance during the alleged period of disability, her daily activities, and the way in which she completed her disability paperwork are all clear, convincing reasons to justify the ALJ's decision to reject plaintiff's testimony. Therefore, the ALJ did not improperly reject plaintiff's testimony.

III. *The RFC captures all of plaintiff's limitations*

The last issue on appeal is whether the ALJ's step five conclusions were based on an RFC assessment that incorporated all limitations evident in the record. Specifically, plaintiff argues that the ALJ did not include sufficient limitations in the RFC to account for her moderate difficulties with concentration, persistence, and pace.

At the fifth step, the Commissioner has the burden to demonstrate that the claimant can engage in some type of substantial gainful activity that exists in "significant numbers" in the national economy. 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). The ALJ will find the claimant disabled if he or she determines the claimant unable to adjust to any other work. 20 C.F.R. §§ 404.1520(g), 416.920(g). The ALJ may meet the burden at step five by using a vocational expert to produce a hypothetical that is based on medical assumptions supported by substantial evidence in the record and that reflects all the claimant's limitations. *Robert v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995). A hypothetical that fails to take into account all of a claimant's limitations is defective. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).

The ALJ found that plaintiff has moderate limitations in concentration, persistence, and pace. The RFC does not contain any express reference to those limitations; however, it limited plaintiff to simple, routine tasks and simple work-related decisions. Plaintiff argues that those limitations fail to account for the ALJ's finding of moderate limitations in concentration, persistence, and pace. As support, plaintiff cites *Brink v. Comm'r Soc. Sec. Admin.*, 343 F. App'x 211, 212 (9th Cir. 2009) (unpublished), in which the Ninth Circuit held that a limitation to "simple, repetitive work" did not accommodate the ALJ's finding of moderate limitations in concentration, persistence, or pace. The Commissioner responds by citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173-74 (9th Cir. 2008), in which the court held that a limitation to simple, routine, repetitive work captured an opinion that the claimant was "moderately limited" in concentration, persistence, and pace, even though the ALJ did not expressly incorporate those limitations in the RFC. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173-74 (9th Cir. 2008).

The ALJ in *Stubbs-Danielson* assessed an RFC limiting the plaintiff to "simple, routine, repetitive sedentary work[.]" *Id.* at 1173. One of the doctors in *Stubbs-Danielson* found that plaintiff had "slow pace, both with thinking and her actions" and also found moderate limitations in her ability "to perform at a consistent pace without an unreasonable number and length of rest periods." *Id.* A second doctor found that plaintiff had "a slow pace, both in thinking [and] actions" yet found that she "retained the ability to carry out simple tasks as evinced by her ability to do housework, shopping, work on hobbies, cooking and reading." *Id.* The court held that the plaintiff's limitations in concentration, persistence, or pace were adequately captured by the limitations to simple, routine work because those findings are consistent with medical evidence. *Id.* *Stubbs-Danielson* and *Brink* demonstrate that determining whether the RFC adequately incorporates moderate limitations in concentration, persistence, and pace requires a fact-intensive and case-specific inquiry.

Dr. Metheny, a psychodiagnostic evaluator, opined that plaintiff has below average delayed recall and poor persistence with difficult tasks. Dr. Prescott, another evaluating doctor, found that she is sensitive to normal work stress. The ALJ afforded considerable weight to the results of the mental examination administered by both Dr. Metheny and Dr. Prescott. It is reasonable to conclude that a below average delayed recall comports with limiting plaintiff to simple, routine tasks and having poor persistence with difficult tasks aligns with a limitation to simple work-related decisions. It is also reasonable to conclude that being sensitive to normal work stress would be captured by limiting the plaintiff to simple tasks. Because the RFC reasonably aligns with the medical evidence provided by Dr. Metheny and Dr. Prescott, it comports with the ALJ's finding plaintiff has moderate limitations in concentration, persistence, and pace. Therefore, the ALJ did not err at step five of the sequential analysis.

IV. *The ALJ's error at step two was harmless*

"A decision of the ALJ will not be reversed for errors that are harmless." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). However, a reviewing court cannot consider an error harmless "unless it can confidently conclude that no reasonable ALJ . . . could have reached a different conclusion." *Id.* at 1056. Therefore, legal errors are harmless only if they are inconsequential to the disability decision. *Id.* at 1055.

Here, the ALJ committed two legal errors: he failed to find that plaintiff had severe impairments at step two in connection with her DIB application and he gave severally legally insufficient reasons for giving less weight to plaintiff's testimony about her symptoms. As explained in Section II, *supra*, the errors in evaluating plaintiff's symptom statements were harmless because the ALJ's treatment of plaintiff's symptom statements remains supported by legally sufficient justification. And because the ALJ committed no reversible error at steps three to five of the SSI analysis, the step two error was also harmless. The ALJ completed the sequential analysis with the SSI claim, demonstrating that he would have denied plaintiff's DIB claim even in the absence of the error at step two.

## CONCLUSION

The Commissioner's decision is AFFIRMED and this case is dismissed.

IT IS SO ORDERED.

Dated this 9th day of July 2018.

Ann Aiken
United States District Judge